**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

EAGLEBURGMANN INDUSTRIES, LP,

      Plaintiff,

   v.

MICHAEL BERNSTEIN and PRECISION
SERVICES INDUSTRIAL GROUP, LLC,

      Defendants.

Case No. 4:25-CV-04967

**PLAINTIFF'S RENEWED MOTION FOR SANCTIONS AND**
**RESPONSE IN OPPOSITION TO DEFENDANTS' NOTICE**

**TABLE OF CONTENTS**

Page

I.    RELEVANT FACTUAL BACKGROUND ............................................................. 3

    A.    Defendants Falsely Misrepresented on November 17, 2025, that PSIG "actively put Mr. Bernstein on administrative leave.  So, he is not actively working for them as of the date of this hearing." ...................... 4

    B.    Defendants Engaged Bernstein in Work Duties Immediately After Purportedly Placing Him on "Administrative Leave" and After Defendants' Representations to the Court That He Was "not actively working for them". ................................................................................. 6

    C.    Bernstein Continued PSIG Business Communications After Defendants Represented He Was on Administrative Leave. ........................ 9

      1.    Communication with customers. ................................................................ 9

      2.    Active business-related communication with PSIG employees. ................. 10

    D.    Defendants Have Failed to Act with Reasonable Diligence in Expedited Discovery. ................................................................................ 11

II.   ARGUMENT ................................................................................................. 16

    A.    Defendants' Bad Faith and Willful Abuse of the Judicial Process Warrant Sanctions. ..................................................................................... 16

    B.    Legal Standard ........................................................................................... 16

    C.    Defendants Intentionally Misled this Court and EagleBurgmann and Should be Sanctioned. ............................................................................... 17

III.  CONCLUSION .............................................................................................. 22

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*3M Innovative Props. Co. v. Tomar Elecs., Inc.*,
No. 05-756, 2006 WL 2670038 (D. Minn. Sept. 18, 2006)......................................... 18

*Balancecxi, Inc. v. International Consulting*,
No. 1:19-CV-0767-RP, 2020 WL 6886258 (W.D. Tex. Nov. 24, 2020),
*report and recommendation* adopted by, 2021 WL 21949001 (W.D.
Tex. 2021). ................................................................................................................. 16

*Bell v. Texaco, Inc.*,
493 F. App'x 587 (5th Cir. 2012) (per curiam)............................................................. 21

*Chilcutt v. United States*,
4 F.3d 1313 (5th Cir.1993).......................................................................................... 17

*Coane v. Ferrara Pan Candy Co.*,
898 F.2d 1030 (5th Cir. 1990) ..................................................................................... 21

*Emerick v. Fenick Indus., Inc.*,
539 F.2d 1379 (5th Cir. 1976) ..................................................................................... 17

*Orchestrate HR, Inc. v. Trombetta*,
178 F. Supp. 3d 476 (N.D. Tex. 2016) ........................................................................ 17

*Pressey v. Patterson*,
898 F.2d 1018 (5th Cir.1990) ...................................................................................... 17

*Smith & Fuller, P.A. v. Cooper Tire & Rubber Co*,
685 F.3d 486 (5th Cir. 2012) ....................................................................................... 17

**Other Authorities**

Fed. R. Civ. Proc. § 37(b)....................................................................................... 1, 17

Rule 26(f)...................................................................................................................... 13

Rule 30(b)(6) ..................................................................................................... 12, 14, 15

Rule 37.................................................................................................................... 17, 22

Plaintiff EagleBurgmann Industries LP ("Plaintiff" or "EagleBurgmann") files this Renewed Motion to Show Cause and for Sanctions pursuant to Federal Rule of Civil Procedure 37(b) against Defendants Michael Bernstein ("Bernstein") and Precision Services Industrial Group, LLC ("PSIG") (collectively, "Defendants") and Response in Opposition to Defendants' Notice[1] ("Response and Renewed Motion"). This Response and Renewed Motion follows months of Defendants' intentional misrepresentations to the Court and EagleBurgmann and their repeated failures to comply with their obligations under the Federal Rules of Civil Procedure.

Throughout this dispute, Defendants have advanced a defense grounded in demonstrably false statements. The Court is already aware of Defendants' false, or at least misleading statements at the November 17, 2025 hearing on EagleBurgmann's Motion for Expedited Discovery, when Defendants' counsel stated that Bernstein had been placed on "administrative leave" and that "he is not actively working for [PSIG] as of the date of [the] hearing", only for Defendants to later backtrack and admit in December 2025 that there were, in fact, "two projects Bernstein had undertaken while on administrative leave" (ECF No. 41).

The record now shows that even these statements were false, and that Defendants knew that they were false when made. Specifically, at the time of these initial statements, Defendants knew Bernstein's ongoing work included a planned meeting between Bernstein

---

[1] On March 10, 2026, Defendants' filed their Notice (ECF No. 49) with the Court again mischaracterizing their conduct. Consistent with the Rules of the Court, in addition to renewing its Motion to Show Cause and for Sanctions, EagleBurgmann timely responds to Defendants' "Notice."

1

and his PSIG supervisor at which Bernstein ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████. Bernstein's work while on

"administrative leave" would also include additional client communications about ongoing

projects and further communications with other PSIG employees about PSIG business

matters. Despite these wide-ranging business-related activities, Defendants persisted in

mischaracterizing his status as "administrative leave" until sworn deposition testimony and

record evidence exposed the true scope of Bernstein's misconduct.

Defendants' latest "Notice" (ECF No. 49), filed only after PSIG's corporate

representative depositions finally concluded in March (after months of delay), reflects their

latest attempt to whitewash Defendants' unlawful conduct and to evade accountability once

the evidentiary record left no room for further distortion. In their Notice, Defendants try to

recast the Court's December 19, 2025, Order as "*clarify[ing]* that the term 'administrative

leave' indicates that Mr. 'Bernstein was not and would no longer be undertaking any work

activities for PSIG.'" *Id.* at 1 (emphasis added).  In effect, Defendants suggest that even

the Court conceded that the term could have been ambiguous.  However, in doing so,

Defendants fail to include the Court's actual holding, that "*every reasonable interpretation

of 'administrative leave'* indicated Bernstein was not and would no longer be undertaking

any work activities for PSIG" (ECF No. 43) (emphasis added).  Moreover, Defendants'

attempt to recast Bernstein's subsequent work as the result of an honest misunderstanding

about the meaning of their own term ignores their own counsel's representation on

November 17, 2025, that "administrative leave" meant "*he is not actively working for them as of the date of this hearing*." The record further shows that, from the very beginning, Defendants themselves understood this meaning internally, but chose to engage Bernstein in competitive work anyway.

Defendants' overall unlawful competitive conduct has caused EagleBurgmann substantial monetary harm in terms of lost business and attorneys' fees, as well as irreparable harm to its reputation and customer relationships.   However, their misrepresentations regarding Bernstein's purported "administrative leave" have added further unnecessary costs and damages to EagleBurgmman. Accordingly, and for the reasons set forth more fully below, EagleBurgmann renews its request for sanctions against Defendants, and specifically for all attorneys' fees and costs incurred by EagleBurgmann from its Motion for Expedited Discovery (ECF No. 12) onward, including any needed reply to and hearing on this motion. EagleBurgmann does not pursue sanctions lightly, and its request is supported by extensive record evidence demonstrating Defendants' misconduct.[2]

## I.      **RELEVANT FACTUAL BACKGROUND**

EagleBurgmann sought through pre-litigation correspondence and this lawsuit to prevent ongoing and irreparable harm to EagleBurgmann caused by Defendants' knowing breaches of Bernstein's continuing obligations under his Confidentiality, Non-Disclosure,

---

[2]  EagleBurgmann's instant motion is confined to seeking sanctions for Defendants' misrepresentations to EagleBurgmann and the Court relating to "administrative leave" reserves all rights and privileges to pursue further recourse, including injunctive relief and further damages, related to Defendants' underlying legal violations, as outlined in its Complaint.

Restrictive Covenant, and IP Ownership Agreement (the "Agreement"). *See* ECF Nos. 1, 1-2.

Rather than comply, Defendants have continued to engage in impermissible and harmful conduct designed to undermine EagleBurgmann's efforts and exacerbate that harm. Their misconduct is compounded by a routine disregard for this Court's rules and resources, forcing EagleBurgmann to spend thousands of dollars in unnecessary legal fees. This conduct forms the basis of the present motion, and the following facts are undisputed.

**A.      Defendants Falsely Misrepresented on November 17, 2025, that PSIG "actively put Mr. Bernstein on administrative leave.  So, he is not actively working for them as of the date of this hearing."**

On November 3, 2025, EagleBurgmann moved for expedited discovery after learning that Bernstein had improperly forwarded confidential, proprietary, and trade-secret information and had selectively purged emails. It sought to assess the scope of ongoing irreparable harm. (ECF No. 12). On November 5, 2025, the Court ordered Defendants to respond by November 12 and set a hearing for November 17. (ECF No. 14).

At the November 17, 2025, hearing, Defendants' counsel represented that PSIG had "actively put Mr. Bernstein on administrative leave. ***So, he is not actively working for them as of the date of this hearing***."  Exhibit N, Hearing Transcript at 11:4-6 (emphasis added).  She then argued that expedited discovery and a preliminary injunction were unnecessary. That representation informed EagleBurgmann's next steps and the Court's denial-in-part of expedited discovery. (ECF Nos. 26, 43).

Given that PSIG is a competitor, EagleBurgmann sought confirmation that Bernstein was indeed not actively working for PSIG and requested 72 hours' advance

4

notice of any change in his status. Counsel followed up on November 20 and 24, 2025. (ECF No. 35-1). On November 24—*seven days after the hearing*—Defendants' counsel stated she would "check in on the notice piece" and did not correct EagleBurgmann's understanding that Bernstein remained on administrative leave. (*Id.*).

On December 15, 2025—approximately one month after the hearing and three weeks after EagleBurgmann first sought clarification of Bernstein's status and prior notice of any change in that status—Defendants' counsel for the first time indicated that Bernstein was actively working for PSIG in support of a conference presentation concerning "what vendors like PSIG, EagleBurgmann, and others can provide to make power plants more efficient." (ECF No. 35-2). EagleBurgmann promptly filed an Emergency Motion upon learning that Bernstein was still performing work for PSIG. (See ECF No. 35).

In opposing EagleBurgmann's Motion, Defendants represented to the Court the following:

> There are only two projects Bernstein has undertaken while on administrative leave: (1) research regarding state licensure requirements; and (2) assisting a colleague with a February 2026 conference presentation.

(ECF No. 41). Defendants, in opposing EagleBurgmann's Emergency Motion, further represented that Bernstein was not involved in any activities requiring the "use of any trade secret of PSIG" or EagleBurgmann and posed "[n]o competitive threat" and also stated as follows:

In the Emergency Motion, Plaintiff states, "Specifically, Defendants' counsel stated that Mr. Bernstein had continued working for PSIG…" [Dkt. 35, ¶ 10.] Describing Bernstein's work as "continued" or continuing is untrue and misleading. Defendants'

5

counsel stated orally, and soon after confirming by email, that some point after the November 17, 2025, hearing, Bernstein *started* the two administrative tasks described herein. Put simply, Bernstein was not performing any tasks for PSIG at the time of the November 17 hearing.

> *Id.* at pg. 9. (Emphasis not added).

On December 19, 2025, the Court granted in part and denied in part EagleBurgmann's Emergency Motion. (ECF No. 35). The Court noted that, at the November 17 hearing, Defendants represented that PSIG had placed Bernstein on "indefinite paid administrative leave." (*Id.*). The Court concluded that "every reasonable interpretation of 'administrative leave' indicated Bernstein was not and would no longer be undertaking any work activities for PSIG" and recognized that "Bernstein's changed status is critical to both EagleBurgmann's decision-making calculus about whether to pursue a preliminary injunction and the Court's resolution of whether such relief is merited." (*Id.*)

**B.** **Defendants Engaged Bernstein in Work Duties Immediately After Purportedly Placing Him on "Administrative Leave" and After Defendants' Representations to the Court That He Was "not actively working for them".**

Defendants understood from the beginning that what they were doing with the "administrative leave" representation was false and misleading.  On November 7, 2025, PSIG sent Bernstein a letter stating, "███████████████████████████ ███████████████████████████████████████████████████████ ██████" Exhibit A, PSIG Letter. During his administrative leave, Bernstein was instructed to ████████████████████████████████████████████████████████████

██████████████████████████ *Id.* According to PSIG's corporate representative, Vice President of Field Sales Gary Neimann, ████████████████████████ ████████████████████████████████████████████. Exhibit B, Neimann Deposition at 139:20-23.

Nevertheless, after papering the record with this "administrative leave" letter, and a day after Defendants' lawyer's statement to the Court that Bernstein "is not actively working for them as of the date of this hearing," on November 18, 2025, Bernstein flew to Cincinnati and met with Michael Viau, PSIG's Vice President of Sales. ████████

████████████████████████████████████████

████████████████████████████████████████

(Exhibit C Viau Deposition at 26:18-22). ████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████ (Ex. C, Viau Dep. at 35:1-4, 36:11-12; *see also* Exhibit D, Bernstein Dep. at 118:17-119:4).

In connection with that effort, Bernstein provided PSIG an Excel spreadsheet containing customer-specific information concerning those opportunities, which he printed out and provided in electronic format to Viau. *See* Exhibit E, Spreadsheet Regarding Customers. ████████████████████████

████████████████████████████████████████

████████████████████████████ *See* Exhibit F, Declaration of Lauren Folsom. ██

████████████████████████████████████████████████████████

█████████████████████████████████████████████ *Id.; see also* Ex. E, Ex. D,

Bernstein Dep. at 131:8-14. ████████████████████████████████

████████████████████████████████████████████████████████

Ex. E. ██████████████████████████████████████████████████

███████████████████████████████████████████ *Id.* ██████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

Ex. D, Bernstein Dep. 131:4-21.

████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████ Ex. C , Viau Dep. at 26:25-

27:1; 28:7-19; 36:11-12; 36:19-22; 37:11-14. ██████████████████

████████████████████████████████████████████████████████

█████████████████████████████████████████████████████. Exhibit

G, Viau Handwritten Notes. ██████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████ *See id.* ████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████. *Id.*



Exhibit F, Declaration of Lauren Folsom.

**C.    Bernstein Continued PSIG Business Communications After Defendants Represented He Was on Administrative Leave.**

After Defendants represented at the November 17, 2025, hearing that Bernstein was on administrative leave and "is not actively working for them as of the date of this hearing", Bernstein also continued to perform work on behalf of PSIG by communicating with prospective and current customers and PSIG colleagues regarding business matters. (*See, e.g.*, Ex. B Niemann Dep.at 140:18-143:3; 172:1-24; 181:23-183:13; 184:1-24  ; Ex. D Bernstein Dep. at 11:23-12:22; 16:1-17:15; 34:1-35:12; 34:1-36:24).

**1.    Communication with customers.**

By his own admission, Bernstein continued communicating with customers concerning PSIG business after November 17, 2025, despite purportedly being on "administrative leave."

(Ex. D, Bernstein Dep.  at 35:1-6

); *see also* Ex. B Niemann Dep.  at 182:12-184:1

████████████. *See* Ex. D, Berstein Dep at 181:14-183:15. When asked directly about his customer communications while on administrative leave, Bernstein testified:



*Id.* at 19:22-20:3.

The full scope and substance of Bernstein's post-November 17 customer communications remain unknown, but Defendants admit that it included at least two other PSIG clients:  Denis Hamel, and Rick Marshall of NAES Fairview. *See* Notice (ECF No. 49 at 3).  In other words, Bernstein continued engaging in work-related activity for PSIG after purportedly being instructed to ████████████████████████████ ████████████████████████ after Defendants represented to the Court and EagleBurgmann that he "is not actively working for them as of the date of this hearing."

### 2. Active business-related communication with PSIG employees.

In addition to communicating directly with customers, Bernstein continued communicating with PSIG employees regarding business matters after November 17, 2025. Bernstein admitted that he had business-related communications with the following PSIG personnel.

- **Michael Viau, PSIG Vice President of Sales**: Bernstein acknowledged that, in addition to the November 18, 2025, meeting, he communicated with Mr. Viau on a regular basis and that some of those communications were business-related. ████████████████████████

10

███████████████████████████████████████████████
████████████████████████.

- **Gary Niemann, PSIG's Vice President of Field Sales**: ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

- **Kathy Tyson, PSIG Marketing and Business Development Manager**: ████████████████████████████████████████████████████████

- **PSIG Employee Jason Lepart**: ████████████████████████████████████████████████████████

- **Casey Brown, PSIG's Vice President**: ████████████████████████████████████████████████████████████████████████████████████████████████

The record therefore shows that Bernstein continued communicating with both customers and PSIG personnel regarding PSIG business after purportedly being placed on "administrative leave" and after Defendants told the Court and EagleBurgmann he was not actively working for PSIG.

**D.    Defendants Have Failed to Act with Reasonable Diligence in Expedited Discovery.**

It has taken EagleBurgmann nearly *five months* since the Court's initial Order granting expedited discovery to fully uncover the scope of Defendants' misrepresentations and related illicit behavior.    Indeed, despite multiple Court orders and repeated

11

meet-and-confer efforts, Defendants delayed expedited discovery, resisted forensic review, and falsely assured EagleBurgmann that discovery was complete—only for depositions to later reveal undisclosed customer contacts, active sales functions, and corporate representative failures directly contradicting their representations to EagleBurgmann and this Court.

On November 17, 2025, the Court granted in part EagleBurgmann's Motion for Expedited Discovery (ECF No. 26). EagleBurgmann served its expedited discovery requests on November 21, 2025. On December 19, 2025, after Defendants' misleading representations, the Court granted EagleBurgmann's Emergency Motion ordering a limited three-hour deposition of Bernstein and a limited Rule 30(b)(6) corporate representative deposition. (ECF No. 43). The Court further advised, in order for those depositions to adequately address the issues, that:

> At least one week before the depositions, Defendants must produce all non-privileged communications and other documents showing all of Bernstein's activities and functions for PSIG—including the cessation or resumption of those activities and functions—from October 17, 2025 through the date of this Order.

*Id.* Although the parties exchanged initial discovery on December 22, 2025, Defendants did not fully comply with the Orders for months thereafter**.** Indeed, Defendants failed to produce substantial discovery regarding non-privileged communications and other documents pertaining to Bernstein's activities and functions with PSIG until **February 5, 2026**.

On December 29, 2025, the parties held an initial meet-and-confer regarding Defendants' discovery deficiencies. EagleBurgmann reiterated the need to calendar

12

depositions for Bernstein and PSIG's corporate representative and receive the specific responsive materials the Court ordered.

On December 30, 2025, the day after the parties' meet and confer, EagleBurgmann's counsel confirmed their agreement that EagleBurgmann would proceed with the Court ordered depositions during the week of January 19 or, at the latest, the week of January 26, provided Defendants cured their discovery deficiencies. Exhibit H, Dec. 30, 2025, Email from Mitchell Robinson. In the same communication, EagleBurgmann's counsel detailed those deficiencies and demanded that Defendants cure them no later than January 5, 2026. *Id.*

On January 5, 2026, rather than complying with their discovery obligations, Defendants stated only that they were "amenable" to supplementing a significant number of responses, without committing to any deadline. Exhibit I, January 5, 2026, Email from Defendants' counsel. On January 9, 2026, EagleBurgmann's counsel followed up and proposed that all supplemental discovery be served no later than January 16. Exhibit J, January 9, 2026, Email between Counsel. Counsel further advised that, assuming EagleBurgmann timely received all discovery supplements, the forensic investigation results, and the documents Defendants were ordered to produce, it would take the depositions of Bernstein and PSIG on January 29. *Id.* Defendants responded that they would "provide an update as to timing" during the parties' Rule 26(f) conference scheduled for January 12, 2026. *Id.* During that conference, Defendants' counsel stated that, due to family related matters, Defendants would not supplement their discovery until January 19, rather than January 16 as requested.

13

On January 23, 2026, after receiving Defendants' responses and objections to EagleBurgmann's Rule 30(b)(6) topics, EagleBurgmann's counsel confirmed that it intended to proceed with PSIG's corporate deposition in person on Thursday, January 29. That same day, following a hearing before the Court, counsel for the parties conferred further. As part of a follow-up email after that conferral, Defendants' counsel acknowledged Defendants' failure to comply with the Court's production order and stated in part the following:

> Given the phrasing "all non-privileged communications and other documents showing all of Bernstein's activities and functions for PSIG—including the cessation of resumption of any of those activities and functions—from October 17, 2025 through the date of this Order." i.e., December 19, 2025, we are planning to produce any non-privileged work-related text messages for the same period. We are in the process of getting this information from our forensic vendor and will expediently work through reviewing and producing it.

Exhibit K, Email Correspondence Between Counsel.

On January 26, 2026, EagleBurgmann responded to Defendants' email noting that "it is unclear what has caused the delay in collecting, reviewing, and producing documents" compliant with the Court's Orders, despite multiple deficiency conferences. *Id.* . In response, Defendants then stated they would provide responses by February 4, 2026—months after the Court's Order. *Id.*

On February 2, 2026, based on Defendants' representation that they would provide their outstanding discovery responses by February 4, EagleBurgmann's counsel emailed to confirm scheduling the deposition of PSIG's corporate representative for February 12 or 13 and Bernstein's deposition for February 13 or 16. Defendants' counsel responded that

14

Defendants could not proceed with either deposition until February 17 or 18, or later that week. Exhibit L, Email Correspondence between Counsel. After significant effort by EagleBurgmann's counsel, Defendants ultimately agreed to produce both PSIG's corporate representative and Bernstein for deposition on February 18. *Id.*

On **February 5, 2026**, after Defendants finally served supplemental materials and a date was agreed upon, EagleBurgmann sent amended deposition notices and specifically asked defense counsel to confirm that "all non-privileged communications and other documents showing Mr. Bernstein's activities and functions for PSIG—including any cessation or resumption of any of those activities and functions—from October 17, 2025 through December 19, 2025" had been produced. Defendants confirmed they had. *Id.* .

The February 18, 2026, depositions revealed a pattern of misconduct and misrepresentations, as outlined above. Furthermore, PSIG's Rule 30(b)(6) designee Gary Niemann revealed additional documents to be produced, and he proved inadequately prepared on Topic No. 5 (the Court-ordered topic regarding Bernstein's "activities and functions … from October 17th onward").  As a result, EagleBurgmann sent follow-up correspondence noting that an adequate corporate representative was needed. See Exhibit M.

Because of this inadequacy, Defendants agreed to produce a second corporate representative. *Id.* On March 9, 2026, EagleBurgmann deposed PSIG's second 30(b)(6) witness, Michael Viau. ██████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

15

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

(Ex. C, Viau Dep at 14:21-25; 26:23-25; 26:18-22; 28:4-6; 28:7-10; 35:1; 35:11-12; *see also* Ex. B, Niemann Dep. at 172:1-172:3) ████████████████████████████

███████████████████████████████████. It was only after this deposition that

EagleBurgmann received Viau's notes ██████████████████████████████████

██████████████████████████████████████████████████████████

In short, PSIG's corporate representatives confirmed that they knew Bernstein was not abiding by any sort of administrative leave and failed to be candid with the Court.

## II.   ARGUMENT

### A.   Defendants' Bad Faith and Willful Abuse of the Judicial Process Warrant Sanctions.

Defendants' conduct reflects a deliberate and sustained effort to mislead both this Court and EagleBurgmann in order to evade responsibility for their actions. That same lack of candor and good faith gave rise to this litigation and has now reemerged throughout discovery. After forcing EagleBurgmann to expend significant time and resources, Defendants' most recent Notice (ECF No. 49) represents yet another attempt to obscure the record and minimize conduct that sworn testimony has now squarely revealed. Sanctions are appropriate.

### B.   Legal Standard

"Discovery in civil litigation takes place largely on faith—faith that each party will voluntarily provide all relevant and responsive evidence to its opponent, even when the evidence in prejudicial to the producing party's case." *Balancecxi, Inc. v. International*

16

*Consulting*, No. 1:19-CV-0767-RP, 2020 WL 6886258, \*13 (W.D. Tex. Nov. 24, 2020), *report and recommendation* adopted by 2021 WL 21949001 (W.D. Tex. 2021). To ensure the civil litigation is orderly and conducted in good faith, Fed. R. Civ. P. 37(b) gives courts broad power to impose sanctions. *Pressey v. Patterson*, 898 F.2d 1018, 1021 (5th Cir.1990) (noting the district court "has broad discretion under Rule 37(b) to fashion remedies suited to the misconduct."). Courts may impose a broad spectrum of sanctions based on a party's poor conduct. *See Chilcutt v. United States*, 4 F.3d 1313, 1323 n. 23 (5th Cir.1993) (stating that district courts "have authority to grant a broad spectrum of sanctions" under Rule 37(b), and "neither this Court nor the Supreme Court has ever determined that the lack of willful, contumacious, or prolonged misconduct prohibits all sanctions") (cited and quoted by *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co*, 685 F.3d 486, 488 (5th Cir. 2012)).[3]

### C. Defendants Intentionally Misled this Court and EagleBurgmann and Should be Sanctioned.

Defendants failed to satisfy their fundamental duty of candor to the Court, an obligation that lies at the core of the judicial process. Courts within the Fifth Circuit and across the country have consistently held that litigants who provide false or misleading representations to the court may be sanctioned under Rule 37, including where such misconduct undermines judicial proceedings or discovery obligations. *See Orchestrate HR,*

---

[3] Although not necessary to impose EagleBurgmann's requested sanctions, nothing herein should be construed as limiting the Court's ability to impose broader sanctions given Defendants' continued deceit throughout the pendency of this case. As the Fifth Circuit courts have routinely held, a party's "flagrant bad faith and **callous disregard of its responsibilities**," inclusive of repeated lies before the Court, evidence of willfulness and bad faith justifying the "district court's extreme sanction" of default judgment. *Emerick v. Fenick Indus., Inc*., 539 F.2d 1379, 1381 (5th Cir. 1976) (emphasis added).

*Inc. v. Trombetta*, 178 F. Supp. 3d 476, 494 (N.D. Tex. 2016); *see also 3M Innovative Props. Co. v. Tomar Elecs., Inc.*, No. 05-756, 2006 WL 2670038, at *5–6 (D. Minn. Sept. 18, 2006) (noting that "false testimony in a formal proceeding is intolerable").

Here, Defendants' misconduct was not inadvertent. It involved affirmative misrepresentations regarding the nature of Bernstein's activities while purportedly on administrative leave, made at critical stages of the case and designed to influence the Court's rulings regarding expedited discovery and injunctive relief.

It is undisputed that Defendants expressly misled the Court, on more than one occasion, about the status and effect of Bernstein's purported administrative leave. The first such misrepresentation occurred on November 17, 2025, during the Court's consideration of EagleBurgmann's Motion for Expedited Discovery. At that time, Defendants represented that Bernstein had been placed on administrative leave, stated unequivocally that "he is not actively working for them as of the date of this hearing" and pointed to that representation as a basis to deny both expedited discovery and injunctive relief. Exhibit N, Hearing Transcript at 11:4-6. The Court has since held, and Plaintiff agrees, that "every reasonable interpretation of 'administrative leave' indicated Bernstein was not and would no longer be undertaking any work activities for PSIG." (ECF No. 35.)

As the record and sworn testimony now established, those representations were false. Despite Defendants' assurances to the Court, Bernstein continued to engage in work-related activities, including sales-related functions and customer-specific discussions, both before and after the administrative-leave representation was made. These

18

facts directly contradict Defendants' original statements and demonstrate that the Court's consideration of expedited relief was based on incomplete and misleading information.

> THE COURT: -- there's a noncompete that clearly is at issue as well. Even if he's not working right now, there -- you know, this is sort of discovery to figure out whether it was (indiscernible). And I agree, if somebody's not working right now, then it's kind of a moot point to say don't continue violating a noncompete, right? But the solicitation provision -- I mean, are you saying that Mr. Bernstein has been separated or he's just indefinitely on leave?
>
> MS. FRISCH: He's on indefinite paid administrative leave. And so, the point of expedited discovery, as I understand it, is to support a motion for preliminary injunction that would also, you know, potentially sideline him. Whereas I think that those concerns can be addressed properly through damages now that he is actively on -- or sorry, not actively, but that he's on the administrative leave.

Exhibit N, November 17, 2025, Hearing Transcript at 11:10-24. Based on that representation and other representations by Defendants' counsel at the hearing, both the Court and EagleBurgmann proceeded on the understanding that immediate injunctive relief prior to discovery was unnecessary.

The second occasion, after correspondence between counsel revealed that Bernstein continued performing work for PSIG, Defendants did not clarify the record. Instead, they made additional misstatements to the Court. Employing a tactic similar to the one advanced in their pending Notice (ECF No. 49), Defendants represented that Bernstein was not involved in any activities requiring the use of "any trade secret of PSIG" or

19

EagleBurgmann and therefore posed "[n]o competitive threat." (ECF No. 41).    Instead, they alleged that "[t]here are only two projects Bernstein has undertaken while on administrative leave: (1) research regarding state licensure requirements; and (2) assisting a colleague with a February 2026 conference presentation." (ECF No. 41 at 5.)

As the record demonstrates, Defendants knew these representations were false. ███

███████████████████████████████████████████████████████████

███████████████████████████████████████ *See* Ex. C, Viau at 26:18-22

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

█████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

Ex. B, Niemann Dep. at 140:12–143:3. ████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████ Ex. D, Bernstein Dep. at 11:15–24.

Likewise, Defendants misrepresented Bernstein's role in assisting with preparation for the users group conference by labeling the work "administrative." █████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████ *Id*. at 17:17– 24.

20

These undisputed facts, coupled with Defendants' admission that ***Bernstein regularly communicated with customers and multiple colleagues regarding business matters during the purported leave***, leave little doubt that Defendants knowingly attempted to mislead both EagleBurgmann and this Court. *See* supra, Sec. I(B). Rather than disclose Bernstein's ongoing substantive role, Defendants advanced arguments that minimized his continued work activities, falsely hid the scope of his actual work duties, and attempted to undercut the perceived urgency of EagleBurgmann's request for injunctive relief.

Fifth Circuit precedent makes clear that such repeated efforts to mislead the Court constitute "contumacious conduct" warranting severe sanctions. *Coane v. Ferrara Pan Candy Co.*, 898 F.2d 1030, 1032 (5th Cir. 1990); *see also Bell v. Texaco, Inc.,* 493 F. App'x 587, 593 (5th Cir. 2012) (per curiam) (noting that repeated failure to provide anything in compliance). Sanctions are particularly appropriate here based on the clear record. Defendants assured the Court that Bernstein "posed no competitive threat to Plaintiff," (ECF No. 40 at 3), Nevertheless, Defendants continued to pursue business with multiple EagleBurgmann customers █████████████████████████████████████ ██████. These facts confirm that Defendants' misstatements were not harmless; they were part of a continuing effort to proceed with the very conduct that necessitated this litigation.

████████████████████████████████████████████████████████

██████████████████████████████████████████████ *See*

Exhibit B, Neimann Deposition at 108:3-109:4.

21

## III.   <u>CONCLUSION</u>

For the reasons set forth herein, and in light of Defendants' willful misconduct, repeated misrepresentations, and failure to comply with the Court's discovery Orders, EagleBurgmann respectfully requests that the Court exercise its authority under Rule 37 and its inherent powers to sanction Defendants by awarding EagleBurgmann all reasonable attorney's fees and costs related to this matter from its Motion for Expedited Discovery onward, with the amount to be proven up by subsequent sworn declaration.

EagleBurgmann further requests that the Court grant all additional relief to which it might be legally or equitably entitled.

Respectfully submitted,

SEYFARTH SHAW LLP

By: */s/Jesse M. Coleman*

Mitchell A. Robinson*
Georgia Bar No. 457665
SEYFARTH SHAW LLP
1075 Peachtree Street, N.E., Suite 2500
Atlanta, Georgia 30309
mrobinson@seyfarth.com
Telephone: (404) 885-1500
Facsimile: (404) 892-7056

Jesse M. Coleman
Texas Bar No. 24072044
SEYFARTH SHAW LLP
700 Milam Street, Suite 1400
Houston, Texas 77002
jmcoleman@seyfarth.com
Telephone: (713) 225-2300
Facsimile: (713) 225-2340
Admitted *Pro Hac Vice*\*

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF COMPLIANCE

Plaintiff's counsel certifies that this motion has been prepared in compliance with Judge Yvonne Y. Ho's Standing Order with regard to all text, including headings, footnotes. Plaintiffs' counsel further certifies, excluding the portions of the filing exempted from the word-count limitation, that the above-referenced motion contains 5,536 words.

*/s/ Jesse M. Coleman*
Jesse M. Coleman

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on April 27, 2026, the foregoing was filed with the Clerk of the Court using the ECF system, which will send notification of such filing to all counsel of record:

*/s/ Jesse M. Coleman*
Jesse M. Coleman

23