United States District Court
Southern District of Texas

**ENTERED**

May 29, 2026

Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

|  |  |  |
|---|---|---|
| EagleBurgmann Industries LP, | § § § | |
| *Plaintiff,* | § § | |
| | § | Civil Action No. 4:25-cv-04967 |
| v. | § § | |
| Michael Bernstein and Precision Services Industrial Group, LLC, | § § § | |
| *Defendants.* | § § | |

## MEMORANDUM AND ORDER [1]

In this dispute over alleged violations of restrictive covenants, Defendants Michael Bernstein and Precision Services Industrial Group, LLC ("PSIG") moved to dismiss Plaintiff EagleBurgmann Industries LP's complaint under Fed. R. Civ. P. 12(b)(6). Dkt. 27. After carefully reviewing the motion, EagleBurgmann's response, Dkt. 33, Defendants' reply, Dkt. 34, the record, and the applicable law, the Court denies the motion to dismiss.

## Background

The following facts are taken as true at this stage. EagleBurgmann is a global provider of industrial sealing technology across a wide range of industries. Dkt. 1 at 4. It employed Bernstein as a territory manager from

---

[1] The parties consented to the undersigned judge. *See* Dkts. 23, 25.

December 2017 to July 2025. *Id.* at 6, 14. In that role, Bernstein served as a senior salesperson "chiefly responsible for selling EagleBurgmann's products and services …." *Id.* at 7. In 2024, he managed sales and operations throughout the United States except the Southeast region. *Id.* In 2025, his territory included the Northwest and Midwest regions. *Id.*

Bernstein was one of a limited number of employees to whom EagleBurgmann gave access to certain confidential, proprietary, and trade secret information for growing the company's business and customer goodwill. *Id.* EagleBurgmann took measures to safeguard that information. *Id.* at 9. One measure was to execute a Confidentiality, Non-Disclosure, Restrictive Covenant, and IP Ownership Agreement (the "Agreement") with Bernstein in February 2023. *Id.* (citing Dkt. 1-2). The Agreement included one-year non-competition and non-solicitation covenants. *See* Dkt. 1-2 at 4-5. As consideration, the Agreement promised Bernstein a "salary increase," "the continued disclosure of confidential and/or proprietary information," and continued employment with compensation and benefits. *Id.* at 2.

Bernstein left EagleBurgmann on July 18, 2025. Dkt. 1 at 14. Ten days later, Bernstein's counsel informed EagleBurgmann that he was considering a position at PSIG, a direct competitor. *Id.* at 14-15. EagleBurgmann warned Bernstein's counsel that the Agreement, including its non-compete provision, remained enforceable. *Id.* at 14. On July 31, 2025, counsel told

2

EagleBurgmann that Bernstein was offered a role at PSIG.  Dkt. 12-4 at 3. Despite EagleBurgmann's warning that it would not exempt Bernstein from the Agreement's restrictions, *see id.*, Bernstein took the job at PSIG.

After Bernstein joined PSIG, EagleBurgmann uncovered several instances when Bernstein allegedly violated his obligations not to compete or solicit EagleBurgmann's customers.  Dkt. 1 at 14.  EagleBurgmann notified PSIG of Berstein's obligations under the Agreement and sent a cease-and-desist letter.  *Id.* at 15.

Bernstein's departure from EagleBurgmann also prompted it to investigate his emails.  Through that process, EagleBurgmann discovered that, before leaving the company, Bernstein had sent hundreds of emails—including messages containing confidential, proprietary, and trade secret information—from his EagleBurgmann account to his personal Gmail.  *Id.* at 15.  During the few months before his departure, Bernstein also deleted over 1,000 emails from his company inbox, more than 100 of which he undertook to permanently remove by further deleting them from his "deleted items" folder.  *Id.*

At the core of EagleBurgmann's pleadings is the allegation that Defendants are working together to utilize its confidential, proprietary, and trade secret information to solicit EagleBurgmann's customers.  *Id.* at 16. Several times, Defendants successfully solicited EagleBurgmann's customers.

*Id.* And they allegedly did so by utilizing Eagleburgmann's proprietary information that included its sales and pricing information. *Id.*

On October 17, 2025 EagleBurgmann brought breach of contract, trade secret misappropriation, and tortious inference claims against Defendants. Dkt. 1 (complaint). Defendants moved to dismiss all claims. Dkt. 27. EagleBurgmann responded, Dkt. 33, and Defendants replied, Dkt. 34. The motion is ripe for resolution.

## **Legal Standard**

Dismissal under Rule 12(b)(6) is warranted if a party fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

"Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Rather, "[t]he complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim." *See Lormand v. U.S.*

4

*Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (analyzing *Twombly*, 550 U.S. at 555-56). When resolving a Rule 12(b)(6) motion, the court "accept[s] all well-pleaded facts as true and view[s] those facts in the light most favorable to the plaintiffs." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quotation omitted).

### Analysis

EagleBurgmann sued Defendants for breach of contract, trade secret misappropriation, and tortious interference with a contract and business relationships. Dkt. 1 at 17-23. Defendants moved to dismiss all claims under Fed. R. Civ. P. 12(b)(6), asserting that none are sufficiently pleaded. Dkt. 27. But their position presupposes that more specifics are necessary than the pleading standard demands. Because EagleBurgmann has stated a plausible basis for relief on their claims, the motion to dismiss is denied.

### I.    The breach-of-contract claims are adequately pleaded.

EagleBurgmann's breach of contract claims against Bernstein hinge on all three restrictive covenants in the Agreement—the non-compete, non-solicitation, and non-disclosure provisions. Dkt. 1 at 17-21. Under Texas law, a breach-of-contract claim requires "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff as a result of the defendant's breach." *Williams v. Wells Fargo Bank, N.A.*, 884 F.3d 239, 244

(5th Cir. 2018) (per curiam) (quoting *Caprock Inv. Corp. v. Montgomery*, 321 S.W.3d 91, 99 (Tex. App.—Eastland 2010, pet. denied)).

Bernstein's motion to dismiss targets the first and third elements. With respect to contract validity, Bernstein contends that the covenants underlying EagleBurgmann's claims are unenforceable due to lack of adequate consideration or overbreadth. Dkt. 27 at 10-18. For the breach element, Berstein asserts there is no plausible allegation that he violated the covenants. *See id.* at 18-19. But as explained below, those contentions do not provide a basis for dismissal.

## A.     The pleadings adequately gave notice as to consideration.

Bernstein argues that the Agreement is unenforceable because it lacked valid consideration. *See id.* at 10-13. He contends that EagleBurgmann provided only illusory promises and past consideration. *See id.* at 12. EagleBurgmann responds that the Agreement was supported by consideration, including that Bernstein "received, *inter alia*, specialized training, EagleBurgmann's goodwill, and confidential, proprietary, and trade secret information." *See* Dkt. 33 at 10.

In Texas, "a covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a

6

greater restraint than is necessary to protect the goodwill or other business interest of the promisee." Tex. Bus. & Com. Code § 15.50(a). Non-solicitation covenants must also "meet the criteria of section 15.50 of the Texas Business and Commerce Code to be enforceable." *Rimkus Consulting Grp., Inc. v. Cammarata*, 255 F.R.D. 417, 438-39 (S.D. Tex. 2008) (citing *Shoreline Gas, Inc. v. McGaughey*, 2008 WL 1747624, at *10 (Tex. App.—Corpus Christi April 17, 2008, no pet.) ("[N]on-solicitation agreements are subject to the same analysis as covenants not to compete.")).

Non-compete and non-solicitation covenants are ancillary to an otherwise enforceable agreement if the employer provides consideration "that is reasonably related to an interest worthy of protection, such as trade secrets, confidential information or goodwill ...." *Marsh USA Inc. v. Cook*, 354 S.W.3d 764, 775 (Tex. 2011). The employee need not "receive consideration for the noncompete ... prior to the time the employer's interest in protecting" its interests arises. *Id.* at 778.

As consideration, the Agreement promised a salary increase, "the continued disclosure of the Company's confidential and/or proprietary information to Employee," and continued employment with compensation and benefits. *See* Dkt. 1-2 at 2 (Agreement attached to pleadings). Because Bernstein was promised confidential and proprietary information, the

Agreement provided for the type of consideration that typically renders non-compete and non-solicit covenants enforceable.

Bernstein relies heavily on *Powerhouse Prods., Inc. v. Scott*, 260 S.W.3d 693 (Tex. App.—Dallas 2008, no pet.), to argue that the promised "continued disclosure" was merely past consideration. Dkt. 27 at 11-13. But *Powerhouse* is distinguishable. Unlike here, the asserted consideration received by the employee in *Powerhouse*—the disclosure of new information—was not part of the written agreement. *Compare* 260 S.W.3d at 696, *with* Dkt. 1-2 at 2 (Agreement promised disclosure). The appellate court in *Powerhouse* also reviewed the issue at a very different juncture, analyzing the trial court's resolution of competing testimony after a bench trial and affirming its finding that the employer gave no new information to the employee after the employment agreement was executed. *Powerhouse*, 260 S.W.3d at 698. At this stage of the case, however, this Court must accept EagleBurgmann's allegations as true.

EagleBurgmann argues, *see* Dkt. 33 at 12-13, and the Court agrees, that the sequence of events detailed in the complaint plausibly suggests that EagleBurgmann gave Bernstein more and different confidential information after he signed the Agreement in 2023. The complaint details how Bernstein's sales territory expanded and changed over the two ensuing years and alleges that Berstein was given access to confidential information to "grow

EagleBurgmann's business ...." Dkt. 1 at 7. And the sensitive information that he accessed included cost, pricing, and customer data that logically was "in constant development and modification" over time. *See Atlus Grp. US, Inc. v. Cole*, 2026 WL 673587, at \*10 (N.D. Tex. Mar. 10, 2026) (making this observation when denying motion to dismiss; finding reasonable inference that an employee "received access to at least some new trade secrets during" the two months between signing the agreement and leaving). EagleBurgmann's allegations, coupled with their "reasonable inferences," *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc), plausibly indicate that adequate consideration was provided. *Cf. Weber Aircraft, LLC v. Krishnamurthy*, 2014 WL 12521297, at \*5 (E.D. Tex. Jan. 27, 2014) (reaching same conclusion even though employee had access to the same "types and categories of confidential information" before signing the employment agreement because the information was "constantly updating and changing"), *adopted by* 2014 WL 12918853 (E.D. Tex. July 29, 2014); *Wright v. Sport Supply Grp., Inc.*, 137 S.W.3d 289, 295, 297 (Tex. App.—Beaumont 2004, no pet.) (non-compete supported by consideration where employee "continued to have access" to employer's computer programs after signing the agreement and those programs were continually updated with new information).

Those same allegations foreclose Bernstein's contention that his at-will status makes Eagleburgmann's promises illusory. *See* Dkt. 27 at 10; *see also*

9

Dkt. 1-2 at 6 ("Nothing herein shall obligate Company to continue to retain the Employee in Company's employment or to limit Company's ability to terminate the employment of the Employee at will."). An employer's promise to give an at-will employee access to confidential information becomes enforceable if the "employer actually perform[s] its illusory promise to provide an employee with confidential information." *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 849-50 (Tex. 2009) (discussing *Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 655 (Tex. 2006)); *see also Rimkus*, 255 F.R.D. at 434 (non-compete was enforceable because the employer provided the promised information before the employee left); *TNT Crane & Rigging Inc. v. Atkinson*, 2015 WL 236643, at *5 (S.D. Tex. Jan. 16, 2015). And as concluded above, EagleBurgmann adequately pleaded that it provided new confidential information to Bernstein. That is enough to satisfy the consideration requirement at this juncture of the case.

**B.    Arguments about the covenants' breadth do not warrant dismissal.**

Bernstein next argues that the non-compete and non-solicit covenants are unreasonably overbroad and, thus, unenforceable. *See* Dkt. 27 at 13-18. EagleBurgmann responds that the Agreement is "narrowly tailored" and commensurate with Bernstein's role with and knowledge of EagleBurgmann's business. *See* Dkt. 33 at 14, 16, 20.

In Texas, covenants not to compete must contain reasonable "limitations as to time, geographical area, and scope of activity" and "not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee." Tex. Bus. & Com. Code § 15.50(a). "[C]ovenants not to compete that 'extend[ ] to clients with whom the employee had no dealings during [her] employment' or amount to industry-wide exclusions are 'overbroad and unreasonable.'" *D'Onofrio v. Vacation Publ'ns, Inc.*, 888 F.3d 197, 211-12 (5th Cir. 2018) (quoting *Gallagher Healthcare Ins. Servs. v. Vogelsang*, 312 S.W.3d 640, 654 (Tex. App.—Houston [1st Dist.] 2009, pet. denied)).

The underlying Agreement included one-year restrictive covenants regarding competition and customer solicitation. *See* Dkt. 1 at 11-13. Those covenants include promises that Bernstein would not:

5.1 Render services or assistance to any person or organization with respect to the financing, research, engineering, development, formulation, production, marketing or selling of a product, service, or process which is the same as, similar to, or competes with, a product or process that Employee had any direct or indirect involvement with or about which Employee acquired or was exposed to Confidential Information or trade secrets at any time during his or her employment with Company;

5.2 Render services or assistance to any person or organization that is engaged in or about to become engaged in the Business or that competes with or intends to compete with the current or planned (if such plans are made known to Employee) business of Employer in the United States of America, or any country in which Employer does business or has customers (such person or organization, a "Competitor"), in a managerial position, a position involving any of the same or similar responsibilities

11

that Employee performed at Company, or any capacity in which Employee could use Confidential Information or trade secrets;

5.3 Solicit or service, on behalf of a Competitor: (1) existing customers of Employer who were served or solicited by Employee or by someone under Employee's supervision or about whom Employee acquired Confidential Information at any time during his or her employment with Company, and/or (2) potential customers of Employer that either Employee solicited or an employee under his or her supervision solicited at Employee's direction during the last 12 months of employment with Company;

5.4 Solicit or service, on behalf of any person or organization that is a supplier to the power industry, gas turbine market: (1) existing customers of Employer who were served or solicited by Employee or by someone under Employee's supervision or about whom Employee acquired Confidential Information at any time during his or her employment with Company, and/or (2) potential customers of Employer that either Employee solicited or an employee under his or her supervision solicited at Employee's direction during the last 12 months of employment with Company; and/or

5.5 Attempt to influence any customer or vendor of Employer to terminate its relationship with Employer, to divert, curtail or cancel its orders, contracts or business with Employer, or to conduct with any person or organization other than Employer any activity which such customer conducts or could conduct with Employer with any person or organization other than the Company.

Dkt. 1-2 at 4-5.

Defendants challenge the non-compete covenants (5.1 and 5.2) because they (1) lack geographic limitations, Dkt. 27 at 15-16, and (2) constitute an industry-wide exclusion, *id.* at 16-17. And they challenge the non-solicitation and non-servicing covenants (5.3 through 5.5) because they "extend beyond those customers with whom Bernstein had personal contact." Dkt. 27 at 17-18. But those contentions do not merit dismissal.

First, whether a covenant is "unreasonably overbroad" largely depends on how they compare with Bernstein's scope of work. Yet the Court cannot conclude based solely on the complaint—which emphasizes Bernstein's vast sales and management areas in 2024 and 2025, Dkt. 1 at 7—that the covenants are broader than reasonably necessary to protect EagleBurgmann's business interests. Further inquiry must await summary judgment. *See Rainwater v. Ragozzino Foods, Inc.*, 2016 WL 8787143, at *5 (E.D. Tex. Mar. 10, 2016) (declining to dismiss based on arguments about the necessity and appropriateness of the agreement's geographical restrictions, viewing that as a summary-judgment issue).

Second, even assuming that some of the covenants are overbroad, EagleBurgmann correctly notes that the covenants could nonetheless be reformed. *See* Dkt. 33 at 14. "Section 15.51 of the Texas Business and Commerce Code requires courts to reform covenants found to be unreasonable as to time, geographical area, or scope of activity." *D'Onofrio*, 888 F.3d at 212. For that reason, courts regularly deny motions to dismiss claims premised on non-compete and non-solicitation covenants even if they are arguably overbroad. *See, e.g.*, *DeWolff, Boberg & Assocs., Inc. v. Pethick*, 2022 WL 4589161, at *8-9 (N.D. Tex. Sept. 29, 2022) (denying motion to dismiss because, while the non-compete and non-solicit covenants were overbroad, the issue of reformation was reserved for summary judgment); *Delta Fuel Co., Inc. v.*

13

*Taylor*, 2019 WL 13159879, at *5 (W.D. Tex. Mar. 22, 2019) ("[E]ven if the geographical scope of the non-compete was rendered overly broad under Texas law, that fact alone does not warrant a motion to dismiss as it does not indicate that Plaintiff has failed to state a claim that is plausible on its face."); *see also, e.g.*, *Revive RX, LLC v. Reed Hoelscher*, 2026 WL 682671, at *4 (N.D. Tex. Mar. 10, 2026) ("[D]ismissal of Plaintiff's breach of contract claims as to the non-compete and non-solicit provisions is not appropriate at [the Rule 12(b)(6)] stage."). The Agreement's enforceability is not suitably resolved now.

### C.   EagleBurgmann sufficiently alleged breach.

Alternatively, Bernstein contends that EagleBurgmann's allegations of breach are conclusory or fail to identify conduct that violates the Agreement. *See* Dkt. 27 at 18-19. Bernstein's argument is not convincing.

EagleBurgmann pleaded that Bernstein breached the Agreement by: (1) "rendering services for a business in competition with Eagleburgmann," i.e. by working for PSIG, a direct competitor, *see* Dkt. 1 ¶¶ 35-36, 39, 51 (Count I); "soliciting customers of Eagleburgmann," *id.* ¶¶ 43-44, 58 (Count II); and "disclosing and using" confidential information such as customer details, *see id.* ¶¶ 41, 43, 45, 65 (Count III). That is enough to plausibly state a breach. *See, e.g.*, *Broadleaf IT, LLC v. Walley*, 2024 WL 4329145, at *11 (S.D. Tex. Aug. 17, 2024) (denying motion to dismiss breach-of-contract claim when employee allegedly "used customer and profit margin information for [competitor's]

14

benefit"), *adopted by* 2025 WL 45626 (S.D. Tex. Jan. 8, 2025). Bernstein's request to dismiss the breach-of-contract claims is denied.

## II.     **Eagleburgmann     adequately     alleged     trade     secret misappropriation under Texas and federal law.**

EagleBurgmann also brings trade secret misappropriation claims under the Texas Uniform Trade Secrets Act ("TUTSA") and the federal Defend Trade Secrets Act ("DTSA"). *See* Dkt. 1 at 25-29. "Because the elements and definitions applicable to the DTSA and TUTSA are 'near identical,' courts have addressed these claims together." *El Paso Disposal, LP v. Ecube Labs Co.*, 766 F. Supp. 3d 692, 711 (W.D. Tex. 2025). Both statutes require "(1) the existence of a trade secret; (2) that the trade secret was misappropriated; and (3) that the misappropriated trade secret was used without authorization." *Id.* (citing *Vest Safety Med. Servs., LLC v. Arbor Env't, LLC*, 2022 WL 2812195, at *6 (S.D. Tex. June 17, 2022) (collecting cases), *adopted by* 2022 WL 2806544 (July 18, 2022)). "A trade secret [under both statutes] is information which derives independent economic value from being not generally known or readily ascertainable through proper means." *See CAE Integrated, LLC v. Moov Techs., Inc.*, 44 F.4th 257, 262 (5th Cir. 2022) (per curiam).

Defendants contend that EagleBurgmann neither sufficiently identified the trade secrets at issue nor alleged their use. *See* Dkt. 27 at 19-23. But the

15

complaint adequately pleaded both elements.  There is no basis to dismiss the trade secrets claims.

### A.   The complaint identifies the trade secrets with reasonable particularity.

According to Defendants, the complaint is deficient because it merely "recites a laundry list of information" when identifying the trade secrets and is stated "without limitation."  *See* Dkt. 27 at 20-21.  EagleBurgmann responds that its pleadings are "replete with expressly stated information" constituting its alleged trade secrets.  Dkt. 33 at 22 (citing Dkt. 1 ¶ 20).

"There is a tension inherent in pleading matters related to trade secrets. By definition, trade secrets are confidential and the party to whom the trade secrets belong has a clear interest in protecting that confidentiality and thus reasonably seeks to describe those secrets in pleadings in a generalized way." *James St. Grp., Inc. v. Newman*, 2015 WL 12746120, at *6 (W.D. Tex. Jan. 29, 2015), *adopted by* 2015 WL 12748179 (W.D. Tex. Mar. 11, 2015).  On the other hand, "there is a growing consensus among district courts in this circuit that plaintiffs bringing claims of trade secret misappropriation must identify, with reasonable particularity, the alleged trade secrets at issue."  *UOP LLC v. Exterran Energy Sols., L.P.*, 2021 WL 8016712, at *1 (S.D. Tex. Sept. 28, 2021) (quotation omitted).  Nevertheless, plaintiffs need not "identify specific trade secrets" in their pleadings.  *Downhold Tech. LLC v. Silver Creek Servs. Inc.*,

16

2017 WL 1536018, at *4 (S.D. Tex. Apr. 27, 2017).  Rather, the complaint need only describe the trade secrets with enough clarity for "defendants [to] understand how each claimed trade secret differs from information in the public domain." *Topstone Commc'ns, Inc. v. Xu*, 729 F. Supp. 3d 701, 706 (S.D. Tex. 2024) (quoting *UOP*, 2021 WL 8016712, at *1).

According to the complaint, Bernstein was given access to EagleBurgmann's "trade secret information including, without limitation:

- [its] sales plan for every territory in the United States;

- [its] market share throughout the United States;

- confidential cost and pricing information for its products;

- [its] privately planned technological upgrades;

- a list of its customers throughout the United States;

- [its] customers' histories and sales preferences;

- [its] proprietary product designs;

- [its] strategic positioning of its capabilities versus its competitors; and

- [its] customer pricing, discounts, and policies."

Dkt. 1 ¶ 20; *see also id.* ¶¶ 85, 96.  The pleadings also describe EagleBurgmann's efforts to safeguard its trade secrets.  *See id.* ¶¶ 23-24.

But the accusations of misappropriation center around Bernstein's acts of sending specific types of proprietary and protected information, like "pricing information and customer lists," to his personal email.  *Id.* ¶ 41.

17

EagleBurgmann alleges that Defendants then misused that information to solicit business. *Id.* ¶ 45. Those allegations put Defendants on notice that the misappropriation claims pertain to confidential pricing and sales information and EagleBurgmann's customer lists. That description satisfies pleading requirements. *See, e.g., Bureau Veritas Commodities & Trade, Inc. v. Cotecna Inspection SA*, 2022 WL 912781, at *6-7 (S.D. Tex. Mar. 29, 2022) (pleadings sufficient where plaintiff identified as trade secrets: "profit and loss information, financial information … sales information … customer information, pricing, pricing strategies, sales volume"); *Penthol LLC v. Vertex Energy Operating, LLC*, 2021 WL 3571243, at *5 (S.D. Tex. Aug. 12, 2021) ("Plaintiff sufficiently alleged the existence of trade secrets, including 'Customer lists, Purchase Contracts ….'"); *Bering Sea Env't, LLC v. Peterson*, 2019 WL 13150186, at *4 (E.D. Tex. Aug. 15, 2019) (trade secrets adequately described by "specific categories ..., such as compilations of customer information … pricing details and arrangements").

Defendants' comparison of EagleBurgmann's allegations to those deemed inadequate in *VariChem Int'l, Inc. v. Riddle's Delhi & Chem. Serv. Co.*, 2025 WL 816740 (S.D. Tex. Mar. 14, 2025), is inapt. There, the plaintiff had maintained "that *any* information it possesses is a trade secret," merely listing categories with "vague descriptors such as 'specifications,' 'methods,' 'data,' and 'know-how,' as well as simply stating 'other materials related to Plaintiff's

18

chemicals business ….'" *Id.* at *4 (emphasis added). The trade secrets identified here are far more specific. To demand disclosure of even more particulars now, "without any protective order in place would likely defeat the entire purpose of attempting to protect those trade secrets in the first place." *See Bureau Veritas*, 2022 WL 912781, at *7 (denying motion to dismiss trade secrets claims; list of categories was sufficient).

**B.     The complaint also sufficiently alleges that Defendants used Eagleburgmann's trade secrets.**

Defendants next argue that the complaint does not allege that they "stole, ha[ve] possession of, disclosed, or used any specific category of information" constituting EagleBurgmann's trade secrets. Dkt. 27 at 21. The Court disagrees.

A misappropriation claim requires that "the defendant *used* the trade secret …." *CQ, Inc. v. TXU Min. Co., L.P.*, 565 F.3d 268, 273 (5th Cir. 2009). "Use refers to 'commercial use' and occurs whenever 'a person seeks to profit from the use of the secret.'" *Terra Nova Scis., LLC v. JOA Oil & Gas Hou., LLC*, 738 F. Supp. 2d 689, 696 (S.D. Tex. 2010) (quoting *Gen. Universal Sys., Inc. v. HAL, Inc.*, 500 F.3d 444, 450 (5th Cir.2007)). It also includes "any exploitation of the trade secret that is likely to result in injury to the trade secret owner or enrichment to the defendant." *Id.* (quoting *Gen. Universal Sys.*, 500 F.3d at 451).

19

EagleBurgmann alleged that Defendants, together, utilized trade secret information that Bernstein had taken from EagleBurgmann "to solicit EagleBurgmann's customers." Dkt. 1 ¶ 43. As an example, EagleBurgmann pleaded that Defendants "solicited EagleBurgmann's existing business by relying on proprietary information including sales and pricing information to gain a competitive advantage." *See id.* ¶ 45. This is sufficient at the pleadings stage. *See, e.g.*, *Villaverde v. Motores Electricos Sumergibles de Mex., S. de R.L. de C.V.*, 2023 WL 12007137, at *10 (S.D. Tex. Feb. 15, 2023) (plaintiffs adequately pleaded use of trade secret by alleging that defendant shared their product reports with third party competitors); *see also, e.g.*, *Maxxim Indus. USA II, LLC v. Tex. Chrome Transp., Inc.*, 2024 WL 4198448, at *6 (W.D. Tex. Aug. 23, 2024) (allegation that defendant used trade-secret information to solicit customers was sufficient), *adopted by* 2024 WL 4197662 (W.D. Tex. Sept. 11, 2024); *Penthol LLC*, 2021 WL 3571243, at *5 (allegation that defendant "copied and used the trade secrets in its competing marketing plans, customer lists, and business development activities" was enough).

Defendants contend that EagleBurgmann merely infers that its trade secrets were used because Bernstein deleted a bunch of emails. *See* Dkt. 27 at 21-22. But in arguing that such an inference is insufficient, Defendants invoke caselaw addressing a full factual record that lacked evidence indicating the trade secrets were actually used. *See GE Betz, Inc. v. Moffitt-Johnston*, 885

F.3d 318, 326-27 (5th Cir. 2018) (affirming grant of summary judgment because it found "no evidence of actual use"); *CAE Integrated*, 44 F.4th at 263 (affirming denial of preliminary injunction after hearing where court reviewed testimony and forensic evidence); *Caliber Home Loans, Inc. v. Cove*, 2025 WL 71983, at *10 (N.D. Tex. Jan. 10, 2025) (summary judgment). When confronted with a motion to dismiss, however, "[c]ourts commonly find that a plaintiff sufficiently alleges misappropriation by asserting that the defendants copied trade secrets onto external drives or emailed such files using a personal email when the defendants are subject to confidentiality agreements or other privacy policies." *Centennial Bank v. Holmes*, 717 F. Supp. 3d 542, 563 (N.D. Tex. 2024) (collecting cases). That tracks EagleBurgmann's allegations here. EagleBurgmann adequately pleaded its trade secret misappropriation claims.

## III. <u>Defendants' interdependent arguments for dismissing the tortious interference claims likewise fail.</u>

EagleBurgmann brought tortious interference with a contract and tortious interference with business relations claims. *See* Dkt. 1 at 22-23. Defendants move to dismiss both claims, but their contentions depend on arguments already considered and rejected above. The tortious interference claims withstand dismissal.

First, PSIG contends that EagleBurgmann's failure to plead a viable breach-of-contract claim, with attendant damages or loss, defeats its claim that

PSIG tortiously interfered with a contract. *See* Dkt. 27 at 24. Those arguments challenge the first and last elements of recovery. *See id*; *Browning-Ferris, Inc. v. Reyna*, 865 S.W.2d 925, 926 (Tex. 1993) (listing elements of tortious interference with an existing contract as "(1) the existence of a contract subject to interference, (2) a willful and intentional act of interference, (3) such act was a proximate cause of damage and (4) actual damage or loss occurred").

But as concluded *supra*, Part I, EagleBurgmann adequately pleaded a breach of contract claim. It also alleged, explicitly, that PSIG's tortious interference caused EagleBurgmann to suffer "actual and exemplary damages, loss of goodwill, loss or reputation, diminished capacity to compete, diverted business, lost profits both past and future, costs and expenses, and other losses." Dkt. 1 at ¶ 74. This is enough. *See, e.g.*, *Suncoast Post-Tension, Ltd. v. Scoppa*, 2014 WL 12596471, at *10 (S.D. Tex. May 13, 2014) (denying motion to dismiss analogous claim where defendant allegedly solicited plaintiff's clients using its "proprietary information, which caused [plaintiff] to lose profits, clients, future business, and goodwill").

Second, Defendants challenge the claim for tortious interference with business relationships by maintaining that EagleBurgmann has no valid trade secret misappropriation claim and no allegation of lost business. Dkt. 27 at 24. In doing so, Defendants attack the elements that require independently tortious conduct and actual damages. *See Coinmach Corp. v. Aspenwood*

22

*Apartment Corp.*, 417 S.W.3d 909, 923 (Tex. 2013) (elements include "(3) the defendant's conduct was independently tortious or unlawful" and "(5) the plaintiff suffered actual damage or loss as a result"). But trade secret misappropriation was adequately pleaded. *See supra* Part II. Moreover, EagleBurgmann detailed its damages consisting of "lost significant business and customer goodwill that it otherwise would" have had. Dkt. 1 ¶ 81; *see also id.*¶¶ 14, 82 (alleging that Defendants "have successfully solicited important customers" and caused EagleBurgmann up to "$1,000,000 in damages" from lost business). Nothing more was needed to plead those elements. Defendants' motion to dismiss is denied.

## Conclusion

For the foregoing reasons, it is **ORDERED** that Defendants Michael Bernstein's and Precision Services Industrial Group, LLC's motion to dismiss (Dkt. 27) be **DENIED** in its entirety.

Signed on May 29, 2026, at Houston, Texas.

_____
Yvonne Y. Ho
United States Magistrate Judge

23